**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **FREDERICK TREESH,** | ) | **CASE NO. 1:12CV2322** |
| | ) | |
| **Petitioner,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NORM ROBINSON, WARDEN,** | ) | **MEMORANDUM OF OPINION** |
| | ) | **& ORDER** |
| **Respondent.** | ) | |
| | ) | |

**I.     Introduction**

This matter is before the Court upon Petitioner Frederick Treesh's (hereinafter "Petitioner" or "Treesh") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed with this Court on September 17, 2012.  (ECF 1).  In his Petition, Treesh raises two grounds for relief, both of which challenge Ohio's lethal injection protocol as adopted on September 18, 2011 and modified in February and March 2012.   For the following reasons, the Petition is **dismissed**.

**II.     Procedural History and Background**

**A.     State Court Proceedings**

On August 29, 1994, a Lake County Grand Jury indicted Treesh on seven counts relating to the death of Henry Dupree and shooting of Louis Lauver during an armed robbery of the Vine Street News, an adult bookstore in Eastlake, Ohio.[1]  On February 2, 1995, Treesh was found guilty by a jury of one count of aggravated murder with two aggravating circumstances, two counts of

_____

[1]     The Ohio Supreme Court related the facts of the case in *State v. Treesh*, 90 Ohio St.3d 460 (2001), and they will not be repeated herein.

attempted aggravated murder, one count of felonious assault and one count of aggravated robbery.

After the conclusion of the penalty phase, the jury recommended Treesh be sentenced to death.  In a judgment entry filed March 2, 1995, the trial court adopted the jury's recommendation.  *State v. Treesh*, No. 95-22542 (Lake Cty Ct. Cmn. Pl. March 2, 1995).  Treesh's conviction and sentence were thereafter upheld on direct appeal and post-conviction.  *See State v. Treesh*, No. 95-L-057 (Ohio Ct. App. 11th Dist. Oct. 19, 1998); *State v. Treesh*, 90 Ohio St.3d 460 (2001); *State v. Treesh*, 1998 WL 946528 (Ohio Ct. App. 11th Dist. Dec. 21, 1998); *State v. Treesh*, 85 Ohio St.3d 1476 (1999).

## B.    First Federal Habeas Petition

On June 10, 2002, Treesh filed a Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254.  *See Treesh v. Bagley*, Case No. 1:02CV462 (N.D. Ohio) (Oliver, J.).  This Petition raised twenty-seven grounds for relief, including one that challenged Ohio's use of lethal injection as a method of execution. Specifically, Ground 24 asserted, in relevant part, that "[e]xecution by lethal injection constitutes unnecessarily cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution" because "[t]he State of Ohio is incapable of insuring that it can professionally carry out the execution of a sentence of death without unnecessarily inflicting torture and pain upon the person being executed**."**  *Treesh*, Case No. 1:02CV462 (N.D. Ohio) (ECF 22-1 at 50, 68-69).[2]

In a Memorandum of Opinion & Order dated March 31, 2007, this Court (through Judge Solomon Oliver) denied Treesh's petition in its entirety.  With respect to Treesh's lethal injection claim, the Court expressly denied that claim on the merits, noting that no federal court, including

---

[2]    Treesh also argued in his Twenty-First Ground for Relief that the trial court's order requiring him to choose between electrocution or lethal injection constituted cruel and unusual punishment.  *Treesh*, Case No. 1:02CV462 (N.D. Ohio) (ECF 22-1 at 50).  At the time of Treesh's conviction and sentence, Ohio law granted prisoners the option to choose between death by electrocution or lethal injection, with electrocution as the "default" method. However, in 2001, Ohio made lethal injection the sole method of execution.  *See* Ohio Rev. Code § 2949.22(A); *Cooey v. Strickland*, 479 F.3d 412, 417 fn 2 (6th Cir. 2007).

the Sixth Circuit, had found lethal injection to be unconstitutional. *Treesh*, Case No. 1:02CV462 (N.D. Ohio) (ECF 72 at 102-03). The Court granted a certificate of appealability ("COA") on two claims; i.e. Grounds Two (a *Miranda* claim) and 15(c) (an ineffective assistance of counsel claim). It denied a COA as to Treesh's claims regarding the unconstitutionality of Ohio's death penalty scheme (including its use of lethal injection), noting that "[a]ll of these issues have been raised many times in other cases and have been found to be without merit." *Treesh*, Case No. 1:02CV462 (N.D. Ohio) (ECF 72 at 114).

Treesh appealed the two claims for which this Court issued a COA. In addition, Treesh requested the Sixth Circuit grant him a COA as to his lethal injection claim. He argued the Supreme Court's intervening decision in *Baze v. Rees*, 553 U.S. 35 (2008) created the possibility that "a death sentenced prisoner could potentially prove, through discovery and a hearing, that a state's lethal injection protocol violated the Eighth Amendment." *Treesh v. Bagley*, Case No. 07-3524 (6th Cir.) (Appellant's Brief filed 8/12/09 at 73). Based on his interpretation of *Baze*, Treesh argued he was entitled to a COA on his lethal injection claim as well as a remand to the district court for "limited discovery." *Treesh v. Bagley*, Case No. 07-3524 (6th Cir.) (Appellant's Brief filed 8/12/09 at 62). The Warden did not oppose Treesh's request. *Treesh v. Bagley*, Case No. 07-3524 (6th Cir.) (Appellee's Brief filed 8/12/09).

On July 13, 2010, the Sixth Circuit affirmed the district court's denial of Treesh's petition with respect to the two grounds for which he had been granted a COA. *Treesh v. Bagley*, 612 F.3d 424 (6th Cir. 2010). In addition, the court rejected Treesh's request for an expanded COA on his lethal injection claim, finding "he has not made a 'substantial showing of the denial of a constitutional right.'" *Id.* at 439.[3] The United States Supreme Court denied Treesh's petition for

---

[3]     By this time, Ohio had abandoned its three-drug protocol and changed to a one-drug protocol with a back-up method for intramuscular injection should vascular access be problematic. In *Cooey (Biros) v. Strickland*, 589 F.3d 210 (6th Cir. 2009), an action brought under 42 U.S.C. § 1983, the Sixth Circuit considered numerous objections to Ohio's new, one-drug lethal injection protocol, including "the undue risk of improper implementation of Ohio's protocol, leading to severe pain," "the employment of untrained and insufficiently competent medical personnel," and "the lack of supervision of the execution process by a licensed

writ of certiorari on March 21, 2011.  *Treesh v. Bagley*, 131 S.Ct. 1678 (2011).

### C.        Section 1983 Litigation in the Southern District of Ohio

On November 14, 2011, Treesh (along with numerous other Ohio death row inmates) filed

an "Omnibus Complaint for Injunctive and Declaratory Relief" pursuant to 42 U.S.C. § 1983 in the

United States District Court for the Southern District of Ohio.  *See In Re Ohio's Execution Protocol*,

Case No. 2:11CV1016 (S.D. Ohio) (Frost, J.) (ECF 4).  This "Omnibus Complaint" raises numerous

challenges to Ohio's lethal injection protocol and states the following six claims for relief: (1)

violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment; (2)  substantive

and procedural due process violations under the Fourteenth Amendment; (3) violations of the rights

of access to counsel and the court under the First, Sixth, Eighth, and Fourteenth Amendments; (4)

equal protection violations; (5) violation of inmates' fundamental rights arising under the Ninth

Amendment; and (6) violations of the First Amendment right to free speech. *See* Omnibus

Complaint, Case No. 11CV1016 (ECF 4) at ¶¶ 1018 - 1131.

The Omnibus Complaint alleges that Ohio's execution protocol creates a "substantial" and/or

"objectively intolerable"  risk of harm in light of each of the named plaintiffs' "individual, unique

physical and mental characteristics" and "the substantial likelihood" of Ohio's maladministration

of its execution protocol "through deviations and variations" from the protocol's written mandates.

*See* Omnibus Complaint (ECF 4) at ¶ 3-4.  In particular, the Omnibus Complaint challenges: (1) the

delivery mechanisms used for the execution drugs; (2) the physical structures employed in Ohio's

execution protocol; (3) the personnel and training involved in Ohio's execution process; (4) Ohio's

"substantial and documented pattern of repeated deviation" from its written execution policy; (5)

the "functional nonexistence of the written policy's safeguards as administered," (6) the "unfettered

discretion" granted to several of the actors involved in the execution process; and (7) the State's

"repeated inability to carry out an execution without encountering serious problems." *See* Omnibus

---

physician." *Id*. at 223.  Relying on *Baze*, the Sixth Circuit held that Ohio's new protocol did not
violate the Eighth Amendment. *Id*. at 223-24. In rejecting Treesh's request for a COA and
discovery on his lethal injection claim, the Sixth Circuit expressly cited to its decision in *Cooey*.

Complaint (ECF 4) at ¶ 4.  The Omnibus Complaint also alleges the denial of other Constitutional

rights, including the right to "unhindered access" to counsel and the right to free speech. *See*

Omnibus Complaint (ECF 4) at ¶ 8, 1120-1131.  Many of these § 1983 claims are based on

allegations that the State of Ohio unlawfully deviates from its written protocol. *See e.g.* Omnibus

Complaint, Case No. 11CV1016 (ECF 4) at ¶¶ 9, 24, 25, 1025 - 33, 1037, 1041, 1051, 1083, 1086,

1089, 1092, 1093, 1098 - 1100.

According to the docket, this § 1983 action remains pending and is, in fact, being actively

litigated in the Southern District of Ohio before Judge Gregory Frost. Discovery appears to be

ongoing and numerous evidentiary hearings have occurred in that action regarding the plaintiffs'

various constitutional claims. *See. e.g.  In Re Ohio's Execution Protocol*, Case No. 2:11CV1016

(S.D. Ohio) (ECF 42, 51, 96, 98, 99, 100, 101, 102, 103, 104, 106).

### D.        Second Federal Habeas Petition

Treesh filed the instant Petition in this Court on September 17, 2012. (ECF 1).  In this

Petition, Treesh raises two grounds for relief, both of which challenge Ohio's lethal injection

protocol as adopted on September 18, 2011 and modified in February and March 2012.  Treesh is

currently scheduled to be executed on March 6, 2013.

In his First Ground for Relief, Treesh claims his execution will violate the Eighth

Amendment because Ohio's current execution policy creates a "substantial risk of harm and/or an

objectively intolerable risk of harm" in light of (1) his unique physical and mental characteristics

(including a history of severe drug abuse, diabetes, hypertension, panic/anxiety attacks, serious

mental illness, ADHD, depression, and addiction); and (2) the "substantial likelihood" of Ohio's

"maladministration" of its own execution policy "through deviations and/or variations from the

written policy's mandate." (ECF 1 at 14).  In this claim, Treesh challenges: (1) the drugs employed

in the execution process; (2) the delivery mechanisms used for those drugs; (3) the physical

structures employed in Ohio's execution protocol; (4) the personnel and training involved in Ohio's

execution process; (5) Ohio's "substantial and documented pattern of repeated deviation" from its

written execution policy; (6) the "functional nonexistence of the written policy's safeguards as administered," (7) the "unfettered discretion" granted to several of the actors involved in the execution process; (8) the State's "repeated failure and apparent inability to carry out an execution without serious problems;" and (9) the denial of Constitutional rights, including the right to counsel. (ECF 1 at 15).

In his Second Ground for Relief, Treesh argues his execution will violate the Fourteenth Amendment because Ohio's current lethal injection protocol will deprive him of equal protection of the law. (ECF 1 at 17).  Because of alleged "variations and deviations" in implementing Ohio's protocol, and the "nearly limitless discretion" vested in certain actors in the execution policy, Treesh asserts Ohio's protocol is "not designed or implemented in a way that insures that all executed inmates are subjected to the same execution experience."  (ECF 1 at 17).   He claims Ohio's protocol is "intentionally applied to each individual inmate at the time of his execution in a way that is arbitrary, irrational, subject to wide and unfounded exercises of discretion and/or intentionally treats similarly situated individuals disparately without any rational basis for doing so." (ECF 1 at 17).   In addition, he asserts Ohio's failure to treat condemned inmates similarly burdens the "fundamental rights of a class of persons that includes all death row inmates, including rights under the First, Sixth, Eighth, Ninth and Fourteenth Amendments." (ECF 1 at 18).  Finally, he claims Ohio's "long and ongoing history" of deviating from its execution protocol "demonstrates that the critical safeguards in . . . the policy are and will be applied arbitrarily and disparately." (ECF 1 at 19).

Treesh seeks (1) a declaration that his death sentence is unconstitutional; (2) discovery; (3) the authority to obtain subpoenas; (4) an order that the Warden provide a complete copy of the state court record; (5) expansion of the record; (6) an order that the Warden file an Answer; and (7) an evidentiary hearing. (ECF 1 at 19-20).

In an Order dated September 24, 2012, this Court noted that "[t]here appears to be significant overlap between the claims set forth in Treesh's habeas petition and the claims he is currently

litigating in the § 1983 civil rights action before Judge Frost." (ECF 3 at 4).  The Court further observed that Treesh had presented no authority to support his positions that such highly duplicative claims may be simultaneously pursued in both habeas and § 1983, or that his instant claims are, in fact, properly brought in habeas. (ECF 3 at 4).  Accordingly, the Court ordered Treesh to submit a brief to this Court setting forth authority as to why the instant Petition should not be dismissed without prejudice.  The Court also allowed Respondent to file a responsive brief, addressing the issues noted above as well as whether Treesh's current petition is "successive" within the meaning of 28 U.S.C. § 2244(b).

Treesh filed a Brief in Response to this Court's Order on October 8, 2012. (ECF 6). Respondent thereafter filed a Motion to Dismiss Treesh's Second Petition and Response to Treesh's Brief regarding this Court's Order. (ECF 8).  Treesh filed his Reply on November 6, 2012 (ECF 11). Thus, the matter is fully briefed and ripe for disposition.

## III.    Analysis

Treesh argues his habeas petition and § 1983 claims are not duplicative because the legal issues and requested remedies in each action are distinct.  He asserts his habeas petition "requires a determination that Ohio is unable to ever constitutionally implement any form of lethal injection and thus that Treesh's death sentence must be vacated, while the § 1983 case requires or at least permits the State of Ohio to keep tinkering with its lethal injection method and implementation in the hope of achieving constitutional compliance." (ECF 6 at 6).  While he acknowledges the two actions will "necessarily rely on some of the same evidence," he maintains his claims are cognizable in habeas because they assert that "regardless of what lethal injection protocols and procedures are adopted by the State of Ohio, those protocols and procedures will never be constitutional or constitutionally implemented by the State of Ohio." (ECF 6 at 7).  Because his petition challenges Ohio's lethal injection protocol as a "general matter," Treesh argues his claims may be pursued in habeas despite the fact he is also a party to the ongoing § 1983 action in the Southern District. (ECF 6 at 8).

Respondent argues Treesh has deliberately confused the true nature of his claims so that he may pursue them in both habeas and § 1983. (ECF 8 at 1).  He argues that, as framed in the Petition, Treesh's claims raise specific challenges to the current procedures for implementing Ohio's current lethal injection protocol based on alleged deviations, variations, and departures from the written protocol.  As set forth in the Petition, Respondent argues Treesh's claims "mirror his claims in his pending § 1983 action before Judge Frost." (ECF 8 at 15).  In Treesh's Brief, however, Respondent notes Treesh characterizes his claims as a general attack on Ohio's lethal injection protocols so as to "morph" them into claims that are cognizable in habeas. (ECF 8 at 15). Respondent argues this is inappropriate for the following reasons:

> [By confusing the true nature of his claims], he can go from argument to argument asserting inconsistent theories with impunity, depending on the positions of the Warden and the Court. When the Court suggests the claims are identical to the claims raised in the § 1983 case, Treesh argues it is a general attack on lethal injection.  When the Warden argues the claims are a general attack on lethal injection which is barred for a procedural reason, such as the statute of limitations, or as in this case, the successive petition statute, Treesh and the other lethal injection litigants argue the claims are an attack based upon the latest rendition of the lethal injection protocol.  Essentially, Treesh wants to have it both ways.

(ECF 8 at 16). Respondent argues, however, that regardless of whether Treesh's claims are considered a general or specific challenge Ohio's lethal injection protocol, they are subject to dismissal.  If the Court considers Treesh's claims to raise a specific challenge to the current procedures for implementing  lethal injection in Ohio, Respondent argues those claims are not cognizable in habeas and should be dismissed on that basis.  If, on the other hand, the Court accepts Treesh's argument that his claims constitute a general, *per se* challenge to lethal injection as a method of execution, Respondent maintains Treesh's petition must be dismissed because it is a "successive" petition pursuant to 28 U.S.C. § 2244(b).  Either way, Respondent argues, Treesh's petition is subject to dismissal as a matter of law.

For the following reasons, the Court agrees with Respondent.

**A.      Method of Execution Challenges:  § 1983 vs. § 2254**

As the Supreme Court has explained, "[f]ederal law opens two main avenues to relief on

8

complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under . . . 42 U.S.C. § 1983." *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004)).  Challenges to the validity of a conviction or sentence, or to its duration, fall "within the core" of habeas corpus. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973)).  "By contrast, constitutional claims that challenge the conditions of a prisoner's confinement  fall  outside of that core" and may be brought pursuant to § 1983.  *Id.   See also Hill*, 547 U.S. at 579; *Adams v. Bradshaw*, 644 F.3d 481, 482 (2011).

The law is unclear, however, regarding the distinction between these two types of actions in the context of a method of execution challenge. The Supreme Court has twice considered the question of the appropriate procedural vehicle (i.e. § 2254 or § 1983) for challenging a State's lethal injection protocol.  In *Nelson v. Campbell, supra*, the Court determined a death-row inmate could proceed under § 1983 to challenge Alabama's use of a "cut-down" procedure to access his veins prior to execution. *Nelson*, 541 U.S. at 644-45.  Two years later, in *Hill v. McDonough, supra*, the Supreme Court found an inmate could bring a § 1983 action challenging the constitutionality of a three-drug sequence used to execute capital inmates in Florida.  *Hill*, 547 U.S. at 580.  In both instances, the Court relied on the fact that those inmates had conceded "other acceptable alternatives" for the procedure and, further, that state law did not require the use of the challenged procedures.  *Nelson*, 541 U.S. at 645-46;  *Hill*, 547 U.S. at 580.  Under these circumstances, the Court found that the inmates' claims (if successful) would not necessarily prevent their eventual executions and were, therefore, properly brought under § 1983.  *Nelson*, 541 U.S. at 645-46; *Hill*, 547 U.S. at 580.

In these cases, the Supreme Court expressly recognized the particular challenges  inherent in categorizing method of execution claims, noting that "[n]either the 'conditions [of confinement]' nor the 'fact or duration' label is particularly apt." *Nelson*, 541 U.S. at 644.  However, because the inmates in both *Nelson* and *Hill* framed their complaints in such a manner as to allow the possibility

for their executions to proceed, the Supreme Court declined to definitively answer "the difficult question of how to categorize method-of-execution claims generally."  *Id.* at 644.

In *Adams v. Bradshaw*, 644 F.3d 481 (2011), the Sixth Circuit considered the circumstances under which an inmate's lethal injection claim could proceed as a habeas claim under § 2254. Construing *Hill* and *Nelson*, the court found that "[w]hereas it is true that certain claims that can be raised in a federal habeas petition cannot be raised in a § 1983 action, it does not necessarily follow that any claim that can be raised in a § 1983 action cannot be raised in a habeas petition." *Id*. at 483 (internal citations omitted).  In that case, the court noted that Adams had not conceded the existence of an acceptable alternative procedure and that, if successful, his lethal injection claim could render his death sentence "effectively invalid." *Id*.  Accordingly, the Court determined that Adams' lethal injection claim could proceed in habeas and affirmed the district court's denial of the Warden's motion to dismiss for lack of jurisdiction. *Id*.

Treesh argues *Adams* supports his position that his habeas and § 1983 lethal injection claims are legally distinct and may be pursued simultaneously.  The Court disagrees.  *Adams* does not provide clear guidance on the issues presented by the instant Petition.  In *Adams*, the petitioner filed a single habeas petition which raised a general, facial attack on Ohio's use of lethal injection as a method of execution. *See Adams v. Bradshaw*, Case No. 1:05CV1886 (N.D. Ohio) (Katz, J.) (ECF 16-4 at 6).[4]  As to this broad, *per se* challenge to Ohio's use of lethal injection, the Sixth Circuit granted Adams a COA and remanded for limited discovery.  Here, Treesh filed an initial habeas petition in 2002, raising a similarly broad, *per se* lethal injection challenge, which this Court dismissed.  After the Sixth Circuit denied him a COA on this claim, Treesh then filed the instant second habeas Petition in 2012 in which he raises highly specific challenges to Ohio's lethal injection protocol, including particular objections to the drugs employed, the delivery mechanisms

---

[4]     Adams' petition claimed generally that "[t]he practice of putting to death a person through lethal injection violations all standards of decency and is cruel and unusual punishment as that term is defined by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution." *See Adams v. Bradshaw*, Case No. 1:05CV1886 (N.D. Ohio) (Katz, J.) (ECF 16-4 at 6).

used for those drugs, the personnel and training involved, and the alleged "pattern of repeated deviation" from Ohio's written protocol. (ECF 1 at 15).

The Court finds these fundamental differences between Treesh's claims and those at issue in *Adams*  (both in terms of their procedural postures and the nature of their respective lethal injection claims) render the Sixth Circuit's decision in that case of limited value in resolving the particular questions presented herein.  *Adams* does not provide guidance regarding whether, having failed to succeed on this issue in his first petition, Treesh may file a second  habeas petition raising yet another lethal injection challenge.  Moreover, given that the petition in *Adams* raised only a broad, unconditional lethal injection claim, the Sixth Circuit did not consider whether the kind of specific and highly particularized challenges at issue herein are cognizable in habeas.  Nor does *Adams* directly address the question of whether an inmate may simultaneously pursue lethal injection challenges in both § 1983 and habeas when the claims presented in those actions are so strikingly similar.

Ultimately, this Court need not determine the "true nature" of Treesh's claims.  Regardless of whether they are considered specific challenges to the implementation of Ohio's lethal injection protocol that sound in § 1983, or a  *per se* challenge to Ohio's use of lethal injection as a method of execution that is cognizable in habeas, the Court finds Treesh's claims are subject to dismissal.

**B.      To the Extent Treesh Raises a Facial, Unconditional Challenge to Ohio's Lethal Injection Protocol,  his Petition is a "Second or Successive" Petition Pursuant to 28 U.S.C. § 2244(b).**

As set forth *supra*, Treesh insists his claims are cognizable in habeas because they assert that "regardless of what lethal injection protocols and procedures are adopted by the State of Ohio, those protocols and procedures will never be constitutional or constitutionally implemented by the State of Ohio." (ECF 6 at 7).  The Court notes that this characterization of Treesh's claims is distinctly at odds with the specific and highly particularized challenges raised in the Petition itself.  However, to the extent Treesh's claims are construed as a facial, unconditional challenge to Ohio's use of lethal injection as a method of execution, the Court finds the instant Petition constitutes a "second

11

or successive" petition under 28 U.S.C. § 2244(b).

28 U.S.C. § 2244 "establish[es] a gatekeeping mechanism for the consideration of second

or successive habeas corpus applications" brought in federal court by state prisoners.  *Stewart v.*

*Martinez-Villareal*, 523 U.S. 637, 641 (1998).  That provision was modified by the Antiterrorism

and Effective Death Penalty Act of 1996 ("AEDPA") to provide, in pertinent part, as follows:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless–
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> (3) (A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(b).

Not every numerically second habeas petition, however, is considered a "second or

successive" petition under § 2244(b).  Indeed, the Supreme Court has explained that a numerically

second petition is not properly termed a "second or successive" petition to the extent that it asserts

claims whose predicates arose after the filing of the original petition.  *See e.g. Slack v. McDaniel*,

529 U.S. 473, 487-88 (2000) (holding that second petition raising unexhausted claims dismissed in

previous "mixed" petition was not "second or successive"); *Stewart*, 523 U.S. at 644-45

(1998)(treating a second petition as part of a first petition where it was premised on a newly ripened

incompetency claim under *Ford v. Wainwright*, 477 U.S.  399 (1986) that had been dismissed from

the first petition as premature); *Panetti v. Quarterman*, 551 U.S. 930, 944 (creating an exception to § 2244(b) for a second petition raising a *Ford* incompetency claim that would have been unripe had the petitioner raised it in his first application); *Magwood v. Patterson*, 130 S.Ct. 2788 (2010) (finding that, where there is a new judgment intervening between two habeas petitions, "an application challenging the resulting new judgment is not 'second or successive'"). *See also In re Jones*, 652 F.3d 603, 605 (2010).

In his Reply Brief, Treesh argues the instant Petition is not "successive" under § 2244(b) because his lethal injection claims were not ripe when he filed his initial petition.  He notes Ohio employed a three-drug lethal injection protocol when his initial petition was filed in 2002, whereas it now uses a one-drug protocol as its primary method of execution with a back-up plan that calls for intramuscular injections.  He further notes that additional changes to Ohio's lethal injection protocol and procedures were made as recently as September 2011.  In light of these changes, Treesh argues the instant Petition raises "totally different claims, and is based upon totally different facts, than was the claim he raised in 2002" and that "the evidence that has developed since 2002 . . . did not exist and could not have been the basis of his claim in 2002." (ECF 11 at 3).  Because the claims raised in the instant Petition were not ripe when he filed his initial petition, Treesh argues this Court should not consider his Petition to be "second or successive" within the meaning of § 2244(b).

The Court disagrees. In his 2002 habeas petition, Treesh expressly raised a facial, unconditional challenge to Ohio's use of lethal injection as a method of execution.  Specifically, in Ground 24 of that petition, Treesh asserted that "[e]xecution by lethal injection constitutes unnecessarily cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution" because "[t]he State of Ohio is incapable of insuring that it can professionally carry out the execution of a sentence of death without unnecessarily inflicting torture and pain upon the person being executed**."**  *Treesh*, Case No. 1:02CV462 (N.D. Ohio) (ECF 22-1 at 50, 68-69).

As characterized by Treesh in his Brief (ECF 6) and Reply Brief (ECF 11), his current lethal injection claims are virtually identical to those asserted in his initial habeas petition.  In his Brief, Treesh argues his current petition "requires a determination that Ohio is unable to ever constitutionally implement any form of lethal injection." (ECF 6 at 6).  In his Reply Brief, Treesh reiterates that his current habeas claims assert that "lethal injection execution in Ohio is unconstitutional now and always will be." (ECF 11 at 5).  According to these characterizations, Treesh's claims are unconditional, *per se* challenges to Ohio's use of lethal injection as a method of execution. As Respondent argues, Treesh cannot have it both ways. To the extent Treesh maintains the instant Petition attacks Ohio's use of lethal injection as a "general matter" and "regardless of what lethal injection protocols and procedures are adopted" (ECF 6 at 7- 8), he cannot also argue his claims have only recently become ripe.

Accordingly, assuming Treesh's Petition raises an unconditional, *per se* challenge to Ohio's lethal injection protocol, the Court finds his Petition is "second or successive" pursuant to § 2244(b).

**C.** **To the Extent Treesh Raises Specific Challenges to Ohio's Implementation of its Lethal Injection Protocol, His Claims are not Cognizable in Habeas**.

While Treesh characterizes his claims in his Briefs to this Court as attacking lethal injection as a "general matter," Respondent notes the Petition itself raises very specific, particularized challenges to the methods and means by which Ohio  implements its lethal injection protocol.  As set forth *supra*, the instant Petition specifically challenges: (1) the drugs employed in the execution process; (2) the delivery mechanisms used for those drugs; (3) the physical structures employed in Ohio's execution protocol; (4) the personnel and training involved in Ohio's execution process; (5) Ohio's "substantial and documented pattern of repeated deviation" from its written execution policy; (6) the "functional nonexistence of the written policy's safeguards as administered," (7) the "unfettered discretion" granted to several of the actors involved in the execution process; (8) the State's "repeated failure and apparent inability to carry out an execution without serious problems;" and (9) the denial of Constitutional rights, including the right to counsel. (ECF 1 at 15).

In addition, Treesh asserts that Ohio's execution policy violates the Eighth Amendment because of  the "substantial likelihood" of "deviations and/or variations from the written policy's mandate." (ECF 1 at 14).  He claims generally that Ohio's "long and ongoing history" of deviating from its execution protocol "demonstrates that the critical safeguards in . . . the policy are and will be applied arbitrarily and disparately." (ECF 1 at 19).

These are precisely the claims raised in the § 1983 action currently pending before Judge Frost.  *See In re Ohio's Execution Protocol*, Case No. 2:11CV1016 (S.D. Ohio) (Frost, J.) (ECF 4 at ¶¶ 4, 9, 24, 25, 1025-33, 1037, 1041, 1051, 1083, 1086, 1089, 1092, 1093, 1098-1100).  Despite Treesh's protestations to contrary, the Court sees no meaningful distinction between the claims as pled in the instant Petition and those currently pending before Judge Frost.  The Sixth Circuit has already determined that such lethal injection claims are properly raised and considered under § 1983. *See Cooey v. Strickland*, 479 F.3d 412, 415 (6th Cir. 2007) (finding that constitutional claims regarding implementation of Ohio's three-drug protocol were properly brought under § 1983); *Cooey v. Strickland*, 589 F.3d 210 (6th Cir. 2009) (analyzing constitutional challenges to implementation of Ohio's one-drug protocol under § 1983). Accordingly, to the extent Treesh's claims are considered specific challenges to the implementation of Ohio's lethal injection protocol, the Court finds his claims are not cognizable in habeas.

In light of the above, Treesh's Petition is dismissed.  Whether it is  regarded as a general challenge to the constitutionality of Ohio's use of lethal injection as a method of execution, or as a specific challenge to the methods and means by which Ohio implements its lethal injection protocol, Treesh's Petition is not properly before this Court.

### III.    Conclusion

The pursuit of lethal injection challenges in simultaneous § 1983 and habeas actions has created confusion for both the courts and the parties.  Making sense of the intersecting (and often conflicting) arguments presented in these parallel actions is particularly challenging in light of the lack of clear authority regarding how to analyze method of execution claims generally.  This

confusion has opened the door to multiple, duplicative actions pending before various judges in different district courts in this Circuit, creating the potential for conflicting decisions and significant delay.

Indeed, at this time, the Court is aware of at least five pending actions in the Northern and Southern Districts of Ohio (including the instant case) in which death row inmates have filed second-in-time habeas petitions challenging Ohio's lethal injection protocol while simultaneously pursuing nearly identical claims in the § 1983 action pending before Judge Frost. *See Phillips v. Robinson*, Case No. 1:12CV2323 (N.D. Ohio) (Lioi, J.); *Post v. Coyle*, Case No. 1:97CV1640 (N.D. Ohio) (Wells, J.) (ECF 174); *Sheppard v. Bagley*, Case No. 1:12CV198 (S.D. Ohio) (Frost, J.); *Smith v. Pineda*, Case No. 1:12CV196 (S.D. Ohio) (Rose, J.).  Numerous other death row inmates have raised lethal injections challenges in their initial habeas petitions, or been permitted to amend their initial habeas petitions to add such challenges, while also proceeding as plaintiffs in Judge Frost's § 1983 lethal injection action.  *See e.g. Gapen v. Bobby,* Case No. 3:08CV280 (S.D. Ohio) (Rice, J.); *Chinn v. Bradshaw*, Case No. 3:02CV512 (S.D. Ohio) (Sargus, J.); *Bethel v. Bobby*, Case No. 2:10CV391 (S.D. Ohio)(Barrett, J.); *Braden v. Bagley*, Case No. 2:04CV842 (S.D. Ohio) (Sargus, J.); *Davis v. Bobby*, Case No. 2:10CV107 (S.D. Ohio) (Sargus, J.); *Hill v. Mitchell*, Case No. 1:98CV452 (S.D. Ohio) (Sargus, J.).

In this Court's view, the multiple and overlapping lawsuits challenging lethal injection in Ohio represent a significant and unnecessary drain on judicial resources.  The Court embraces the proposition that death row inmates have full opportunity to raise constitutional challenges to Ohio's lethal injection protocol, and have full opportunity to raise claims that Ohio is not following its own protocol.  Here, Treesh had the opportunity to raise, and did raise in 2002, a general, unconditional attack upon Ohio's use of lethal injection as a method of execution in his first habeas petition.  He is also actively pursuing specific challenges to the implementation of Ohio's current lethal injection protocol in his § 1983 action before Judge Frost.  Treesh is not entitled to yet another opportunity to raise his lethal injection claims in federal court, particularly when he is not able to articulate how

16

this case is different from his 2002 habeas case and/or his pending § 1983 case.

Accordingly, and for all the reasons set forth above, Treesh's Petition is hereby dismissed. The Court further determines that no jurist of reason could debate the Court's conclusions with regard to either of Treesh's Grounds for Relief.  Therefore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken with good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Federal Rule of Appellate Procedure 22(b).

IT IS SO ORDERED.


*/s/Dan Aaron Polster 11/15/12*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE